PITTMAN, Judge.
 

 Consolidated Pipe & Supply Company (“Consolidated”) appeals from a judgment of the Jefferson Circuit Court, Bessemer Division, determining that its claims against the City of Bessemer (“the City”), T.E. Stevens Company, Inc. (“the contractor”), and Christopher Development and Construction, LLC (“the subcontractor”), were barred by the operation of state competitive-bid laws. We affirm as to the claims against the City, but we reverse as to the claims against the contractor and the subcontractor.
 

 The record in this case reveals that the contractor and Visionland Outlet Center, LLC (“the developer”), contracted for the construction of a shopping center on land near the Visionland amusement park. The City and the developer subsequently agreed that the developer would complete the improvements envisioned as a shopping mall and that invoices for costs of engineering and construction would be forwarded to the City for payment, although the City’s expenditure would be capped at $1 million and would be treated as an advancement of funds derived from future sales-tax revenues (and the City subsequently adopted a municipal resolution memorializing that arrangement). The contractor hired the subcontractor in September 2000, and the subcontractor in turn contacted Consolidated in order to seek materials for the water and sewer lines that the subcontractor would be primarily responsible for laying. The contractor issued Purchase Order Number 9907; that purchase order listed Consolidated as the vendor and directed shipment of materials to the City
 
 “c/o"
 
 (i.e., in care of) the subcontractor. Consolidated was paid $44,029.58 by the City in October 2000; however, after the City had expended all the funds within the $1 million limit speci-
 
 *184
 
 fled in its resolution, Consolidated unsuccessfully sought payment from the City, the contractor, and the subcontractor for other supplies that Consolidated had provided with respect to the construction project.
 

 In September 2001, Consolidated brought a civil action (case no. CV-01-1171) in the trial court naming the City as a defendant and seeking $44,558.93 plus attorney fees, interest, and costs; in October 2001, Consolidated amended its complaint to add the contractor and the subcontractor as additional defendants. The City moved to dismiss the claims against it under Rule 12(b)(6), Ala. R. Civ. P., alleging a failure to state a claim upon which relief could be granted; that motion was denied on November 4, 2001, and the City was given 30 days to answer the complaint. However, the City did not file and serve an answer in the action in response to the trial court’s order.
 

 After the parties had engaged in discovery, the case was reassigned in April 2003 to a different circuit judge, who set the case for a trial in July 2003; however, because of withdrawals of counsel, that trial did not occur. Rather, the City filed a motion for a summary judgment in August 2003 in which it alleged that no contract was in existence between it and Consolidated. Although Consolidated filed a response in opposition, the trial court granted the City’s summary-judgment motion. The case remained pending as to the other defendants, however, and the case was consolidated “for discovery and trial”
 
 [1]
 
 with a second civil action (case no. CV-03-1293) in which the contractor had sued the subcontractor and its principal. Consolidated also filed a motion requesting that the trial court revisit its summary-judgment order as to the City.
 

 After a series of continuances, the judge to whom the case had been reassigned recused himself in April 2008 at the behest of the contractor, who noted that that judge had become a client of Consolidated’s attorney in a separate matter. The case was then reassigned to the judge who had originally been assigned the case. In October 2008, after mediation had proved unsuccessful, a number of motions were filed, including a “renewed” summary-judgment motion on the part of the contractor (although no previous summary-judgment motion from that defendant appears in the record) and Consolidated’s motion to vacate the summary-judgment order that had been entered in favor of the City. The contractor’s summary-judgment motion was denied, but Consolidated’s motion to vacate was granted and the claims against the City were again placed at issue. The City, in turn, moved to vacate the order reinstating the claims against it, but its motion was denied.
 

 On April 6, 2009, when the case was again scheduled to be tried, the City made an oral motion to dismiss the claims against it on the asserted basis that the purported contract between the City and Consolidated was void under Alabama statutes requiring competitive bidding as to public works and as to expenditures of more than $15,000 for construction supplies. Consolidated filed a motion to strike that defense and requested leave to amend its complaint, and the City filed a written motion restating its request for a dismissal. On April 23, 2009, the City filed an answer — its first responsive pleading in the case — asserting the applicability of
 
 *185
 
 competitive-bid laws as an affirmative defense. After considering the City’s arguments, the trial court granted the City’s oral motion to dismiss; it ultimately denied the written motion to dismiss “as moot.” Consolidated filed a motion in May 2009 requesting that the trial court alter, amend, or vacate its decision (which was at that time, like the 2008 decision, a nonfinal order).
 

 At a trial setting on May 4, 2009, the contractor and the subcontractor asserted that the claims Consolidated had stated against them should also be dismissed, positing that the trial court, in dismissing the City as a defendant, had determined that the contract from which Consolidated’s claims stemmed was void. After taking limited testimony from a representative of Consolidated, the trial court agreed with the remaining defendants and ruled on August 5, 2009, that the claims against the contractor and the subcontractor were also due to be dismissed. Because all claims as to all parties in case no. CV-01-1171 had been adjudicated, Consolidated’s May 2009 motion challenging the ruling as to its claims against the City ripened into a postjudgment motion, and was deemed filed, as of that date.
 
 See New Addition Club, Inc. v. Vaughn,
 
 903 So.2d 68, 72 (Ala.2004) (holding that any “post-judgment” motion filed before the entry of a final judgment quickens upon the subsequent entry of a final judgment). The postjudgment motion was denied on September 24, 2009, and Consolidated filed notices of appeal in both case no. CV-01-1171 and case no. CV-03-1293. The two appeals were transferred to this court by the Alabama Supreme Court, were assigned numbers 2090095 and 2090096, and were consolidated by this court. However, we note that no judgment has yet been entered by the trial court as to the contractor’s claims in case no. CV-03-1293; thus, we dismiss the appeal in case no. 2090096.
 

 Consolidated asserts six issues in its appellate brief, raising questions of procedural, substantive, and constitutional law. The issues may be summarized as:
 

 I. Whether the judgment in favor of the City was procedurally proper notwithstanding the City’s delay in asserting the applicability of state competitive-bid laws.
 

 II. Whether the judgment in favor of the contractor and the subcontractor was procedurally proper notwithstanding those defendants’ delay in moving to dismiss based upon illegality of the alleged contract.
 

 III. Whether the judgment is substantively defensible based upon the absence of a contract between Consolidated and any or all of the defendants.
 

 IV. Whether the alleged contract between Consolidated and the City is void because of the application of competitive-bid laws.
 

 V. Whether, if the alleged contract between Consolidated and the City
 
 is
 
 void because of the application of competitive-bid laws and precedents thereunder, the judgment should nonetheless be reversed on the basis that Consolidated’s property was taken without due process of law.
 

 VI. Whether, if the alleged contract between Consolidated and the City is void, that voidness may be relied upon by the contractor and the subcontractor as a defense to Consolidated’s claims against them.
 

 Of the defendants, only the City and the contractor have filed appellate briefs; the subcontractor has not favored this court with a brief and did not appear at oral argument. The City has responded in its brief to the issues that directly concern its interests by asserting that the trial court
 
 *186
 
 properly allowed the competitive-bid defense, that there existed no contract between it and Consolidated, that any such contract would (as the trial court determined) have violated competitive-bid laws, and that no due-process violation occurred. The contractor responded in its brief to the issues that concern its interests by positing that a summary judgment was properly entered in its favor in response to its dispositive pretrial motion, that no contract between it and Consolidated existed, that any such contract would violate one of the two competitive-bid statutes cited by the parties, and that the voidness of the contract on that basis warrants affirmance.
 

 Although the orders composing the judgment under review are products of the defendants’ pretrial motions to dismiss for failure to state a claim upon which relief could be granted (which are allowed under the final clause of Rule 12(h)(2), Ala. R. Civ. P.), each involved consideration of materials outside the pleadings. Thus, the proper standard of review is that applicable to a summary judgment.
 
 See Hoffman v. Truck Driving Acad., Inc., 777
 
 So.2d 151, 153 (Ala.Civ.App.2000) (reaching similar procedural conclusion),
 
 abrogated on other grounds by Ex parte First Alabama Bank,
 
 883 So.2d 1236 (Ala.2003);
 
 cf. Sims v. Lewis,
 
 374 So.2d 298, 301 (Ala.1979) (noting that a party’s failure to state a claim upon which relief can be granted can be raised by motion after the pleadings are closed; mode of review depends on whether materials extraneous to the complaint are considered).
 

 “ ‘[An appellate court] reviews a summary judgment
 
 de novo.
 
 We seek to determine whether the movant has made a prima facie showing that there exists no genuine issue of material fact and has demonstrated that the movant is entitled to a judgment as a matter of law. In reviewing a summary judgment, [an appellate court] review[s] the evidence in the light most favorable to the nonmovant. Once the movant makes a prima facie showing that he is entitled to a summary judgment, the burden shifts to the nonmovant to produce “substantial evidence” creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ ”
 

 Sartin v. Madden,
 
 955 So.2d 1024, 1026-27 (Ala.Civ.App.2006) (citations omitted; quoting
 
 Muller v. Seeds,
 
 919 So.2d 1174, 1176-77 (Ala.2005)).
 

 We first address the procedural arguments raised by Consolidated. Each of those arguments challenge the fundamental fairness of the judgment in light of the facts that (a) the case had been pending for almost eight years when the applicability of the competitive-bid laws was first asserted by the City and (b) no motion to dismiss, summary-judgment motion, or pleading on the City’s behalf had raised that defense when it was first advanced at an April 2009 trial setting. Under Rule 8(c), Ala. R. Civ. P., an affirmative defense that is not stated in a defending party’s first responsive pleading is deemed waived. However, in this case, although the City did not file an answer until April 23, 2009, the competitive-bid defense
 
 was included
 
 in that answer. Although the City’s delay in filing an answer is not commendable,
 
 [2]
 
 a trial court has the discretion to allow the filing of a tardy answer in
 
 *187
 
 the same manner that that court would have discretion to allow a tardy amendment to a previous answer that asserts a new defense that does not deprive the claimant of the opportunity to present
 
 facts or evidence
 
 that would otherwise have been offered.
 
 See Ex parte Liberty Nat’l Life Ins. Co.,
 
 858 So.2d 950, 954 (Ala.2003);
 
 Hair v. Moody,
 
 9 Ala. 399, 400 (1846) (“the allowance of pleadings out of time[] is a matter of discretion with the court, the exercise of which is not a subject of revision”). The City’s dispositive motion relying on the competitive-bid issue thus conformed to its answer. Similarly, because the ground for dismissal asserted by the contractor and the subcontractor on May 6, 2009, stemmed from the trial court’s April 2009 ruling in favor of the City, those defendants may not properly be viewed as having acted in a dilatory manner in seeking a judgment in their favor based upon that ruling at that time. We thus reject Consolidated’s position that the trial court’s judgment is procedurally defective, and we proceed to consider the arguments regarding the substantive correctness of the judgment.
 

 Because an appellate court may properly affirm a summary judgment on any ground apparent of record “unless due-process constraints require otherwise,”
 
 see Wheeler v. George,
 
 39 So.3d 1061, 1083 (Ala.2009), Consolidated, the City, and the contractor prudently address the issue of the existence of a contract on the basis that the absence of substantial evidence tending to show the existence of such a contract could potentially support all or part of the judgment under review as a separate and independent ground.
 

 The pertinent facts may be briefly summarized. In July 2000, the principal of Consolidated summoned Consolidated’s credit manager into a meeting with the subcontractor’s principal and informed the manager that the subcontractor and the contractor had reached an agreement under which the subcontractor would install pipe for the shopping center; at that time, the subcontractor’s principal informed Consolidated’s manager that Consolidated would receive a purchase order from the contractor for piping material, that the material was to be sold on a tax-exempt basis, that the material was to be shipped to the City in “care of’ the subcontractor (and at the subcontractor’s address), and that the subcontractor would thereafter submit invoices to the contractor for forwarding to the City (who would, it was apparently envisioned, pay Consolidated “[f]or tax purposes”).
 

 The contractor’s purchase order that was eventually forwarded to Consolidated bore the legend that the material was to be “[sjhipped to” the subcontractor at its address, prompting the manager to telephone both the contractor and an employee of the City to seek and obtain assurances that the material was to be shipped to the subcontractor but that the City was to be billed. Although Consolidated’s invoice for three shipments of pipe that were sent by Consolidated to the subcontractor was paid by the City after that invoice had been sent to the subcontractor for handling, Consolidated’s invoices for subsequent shipments were not paid by any of the defendants, although the subcontractor insisted that it had forwarded those invoices to the contractor for handling (which the contractor denies). Thus, the essential events in this case that arguably support Consolidated’s position regarding the existence of a contract may be summarized as being (a) representations by the subcontractor concerning the City’s alleged ultimate agreement to pay for supplies to be provided to that subcontractor; (b) the issuance of the contractor’s purchase order identifying the City as the
 
 *188
 
 client and identifying the subcontractor as the party to whom deliveries should be made; and (c) the subcontractor’s and the contractor’s having forwarded at least one invoice to the City for ultimate payment.
 

 In turning first to the judgment in favor of the City, we note the potential for reasonable doubt as to whether any of the defendants, public or private, actually made an effective agreement to pay Consolidated in exchange for pipe shipments; notably, there is no evidence indicating that the City gave the contractor or the subcontractor any actual authority to bind it to pay Consolidated. However, in light of the prevailing standard of review as to summary judgment in general, to which we have already directed the reader’s attention herein, we will assume, for the sake of argument, that either the telephonic confirmatory statements of the City’s employee or the presence in the record of a letter from the contractor’s project manager indicating that the City had dictated changes in the project on or before February 6, 2001, permits an inference that the City could be considered a contracting party as to Consolidated.
 

 Having made the assumption that a contract
 
 was
 
 formed between Consolidated and the City, we observe that the competitive-bid issue comes to the forefront. One of the two arguably pertinent statutes cited by the City is Ala.Code 1975, § 41-16-50. Under that statute,
 

 “all expenditure of funds of whatever nature for ... the purchase of materials, equipment, supplies, or other personal property involving fifteen thousand dollars ($15,000) or more ... made by or on behalf of ... the governing bodies of the municipalities of the state ... shall be made under contractual agreement entered into by free and open competitive bidding, on sealed bids, to the lowest responsible bidder.”
 

 Thus, § 41-16-50 reaches any expenditure by the City of more than $15,000 for materials, equipment, or supplies. Further, “[cjontracts entered into in violation
 
 of
 
 [the] article [of the Code in which § 41-16-50 is included] shall be void.” Ala.Code 1975, § 41-16-51(d). Estoppel, moreover, is not a valid defense to the application of competitive-bid laws such as § 41-16-50.
 
 Ex parte Ballew,
 
 771 So.2d 1040, 1042-43 (Ala.2000);
 
 see also Town of Coffee Springs v. Glover,
 
 10 Ala.App. 475, 478, 65 So. 440, 441 (1914) (“A contract which is outside the pale of the corporate authority confers no right, and neither the making of the ultra vires contract nor the receiving of benefits under it estops the corporation from setting up its invalidity.”).
 

 The plain language of this statute completely undermines Consolidated’s position as to the City’s liability on the contract theory upon which Consolidated has relied in this case. Assuming, as we have, that a contract existed between Consolidated and the City under which Consolidated was to provide piping components, those items would amount to “materials” and “supplies” within the scope of § 41-16-50; further, it is undisputed that the contract claimed to exist by Consolidated involved moneys greater than $15,000 but was not competitively bid so as to render it legally valid under § 41-16-50 and 41-16-51. Although use by covered entities of competitive-bid laws as a means to escape otherwise subsisting liability is not commendable, we are bound to follow the expressed will of legislature in the competitive-bid laws for the benefit of the public at large.
 
 See Board of Sch. Comm’rs of Mobile County v. Coastal Builders, Inc.,
 
 945 So.2d 1059, 1062 (Ala.Civ.App.2005)
 
 *189
 
 (plurality opinion).
 
 [3]
 

 Consolidated also raises the question whether the application of § 41-16-50 violates due-process principles. That argument was first advanced in Consolidated’s postjudgment motion to alter, amend, or vacate and is untimely.
 
 [4]
 

 See United Servs. Auto. Ass’n v. Wade,
 
 544 So.2d 906, 917 (Ala.1989) (“constitutional issues may not be raised for the first time in a post-judgment motion”). Even were it properly preserved, however, the due-process argument raised by Consolidated assumes that Consolidated has a protecta-ble property interest
 
 in payment from the City
 
 for its pipe supplies. Just as all persons are charged as a matter of public policy with a knowledge of the law pertaining to their transactions,
 
 see Barber Pure Milk Co. of Montgomery v. Alabama State Milk Control Bd.,
 
 275 Ala. 489, 494, 156 So.2d 351, 355 (1963), anyone who performs work or delivers supplies to or on behalf of a municipality may properly be charged with knowledge of applicable competitive-bid statutes such as § 41-16-50.
 
 See CommuniCare, Inc. v. Wood County Bd. of Comm’rs,
 
 161 Ohio App.3d 84, 93-94, 829 N.E.2d 706, 713-14 (2005) (those who deal with entities covered by competitive-bid laws are charged with knowledge of entities’ limitations in executing contracts; contractor must ascertain whether its contract complies with state statutes so far as they are applicable, and a contractor who fails to do so performs the contract at its peril). Because any contract between the City and Consolidated in the nature of the contract claimed to exist in this case falls within the limiting scope of § 41-16-50, Consolidated’s “deprivation-of-property” argument based upon constitutional due-process principles against the judgment entered in favor of the City must fail, and we affirm that aspect of the trial court’s judgment.
 

 Our affirmance of the judgment as to the City does not, however, entitle the other defendants to take advantage of the voidness of any contractual arrangement involving Consolidated and the City.
 
 [5]
 
 Under Alabama law, a party is entitled to recovery under a contract if that party’s right to recovery can be established without regard to a void stipulation.
 
 Denson v. Alabama Fuel & Iron Co.,
 
 198 Ala. 383, 393, 73 So. 525, 529 (1916). Notwithstanding the public policy counseling against the enforceability, as against
 
 public
 
 entities such as the City, of unbid contracts within the scope of competitive-bid laws, we see no reason why, to the extent that
 
 private
 
 entities, such as the contractor and the subcontractor, may have entered into contractual arrangements with Consolidated but have not complied with their obligations thereunder, those entities cannot properly be held hable (just as other private parties are liable) upon breach.
 

 A reasonable view of the evidence of record at the time of, and the testimony
 
 *190
 
 adduced during the hearing on, the contractor’s and subcontractor’s dispositive motions supports the view that the “contract” at issue involved the contractor’s and the subcontractor’s having agreed to act as go-betweens with respect to the City and Consolidated to ensure that funds were disbursed to Consolidated for its having furnished its materials and supplies. As counsel for Consolidated noted in oral argument, although it was envisioned by all parties that the City would be the primary remitter to entities involved in the shopping-center project in order to avoid prevailing sales taxes, the contractor’s principal admitted during his deposition that, in the event that funds provided by the City proved not to be enough for infrastructure work, the question of payment “would fall under who bought the materials.” The contractor agreed in its answers to requests for admissions that it had given one of its purchase orders to Consolidated “to furnish materials for sanitary sewers and water lines in connection with the construction” of the project as to which it was the general contractor, and Consolidated’s credit manager testified that the materials themselves were delivered to the custody of the subcontractor. Thus, without regard to the involvement of the City as a limited third-party payor, there is evidence to support the proposition that either the contractor or the subcontractor “bought” the materials.
 

 Under Alabama law, “whether parties have entered a contract is determined by reference to the reasonable meaning of the parties’ external and objective actions,” and “[c]onduct of one party from which the other may reasonably draw an inference of assent to an agreement is effective as [an] acceptance.”
 
 SGB Constr. Servs., Inc. v. Ray Sumlin Constr. Co.,
 
 644 So.2d 892, 895 (Ala.1994). In
 
 SGB,
 
 a summary judgment entered in favor of a general contractor and a municipal medical-clinic board on breach-of-contract claims brought by the lessor of heavy construction equipment was reversed on appeal because the record contained equipment-delivery tickets addressed by the lessor to the general contractor and evidence of payments to the lessor by the medical-clinic board.
 
 Id.
 
 Similarly, the trier of fact in this case may well conclude from the evidence of record that both the contractor and the subcontractor assented to Consolidated’s role as a sub-sub-contracting supplier of essential materials to the project that both private defendants were involved in constructing. Thus, the judgment under review is reversed as it applies to the contractor and the subcontractor, and the cause is remanded for further proceedings consistent with this opinion.
 

 2090095 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 2090096 — APPEAL DISMISSED.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . " 'Where several actions are ordered to be consolidated for trial, each action retains its separate identity and thus requires the entry of a separate judgment.’
 
 League v. McDonald,
 
 355 So.2d 695, 697 (Ala. 1978).”
 
 Alabama Classic Homes, Inc. v. Wickes Lumber Co.,
 
 836 So.2d 885, 887 (Ala.Civ.App.2002).
 

 [2]
 

 . We note that the City has been represented by a number of different lawyers during the protracted history of this case.
 

 [3]
 

 .We thus do not reach the question whether the contract claimed to exist between Consolidated and the City may also be void under other laws concerning competitive bidding relied upon by the City, such as Ala.Code 1975, § 39-2-1 et seq.
 
 But see
 
 Ala.Code 1975, § 39-2-1(4) (under which "public property” upon which “public works" subject to competitive bidding are located includes real property that the awarding authority itself either owns or has a contractual right to own or purchase).
 

 [4]
 

 . Consolidated
 
 did
 
 serve notice of its constitutional challenge upon the attorney general, who filed an answer and waiver as to further participation in the case.
 

 [5]
 

 . We note that, at oral argument, counsel for the contractor candidly conceded that private entities such as the contractor are not subject to the competitive-bid laws of Alabama.